# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

|  |  |  |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, MSP RECOVERY LLC, MSP RECOVERY CLAIMS, SERIES LLC, *and* MSPA CLAIMS 1, LLC | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.   1:17-cv-01537-JBM-JEH |
| v. | ) ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | ) ) ) | |
| Respondent. | ) | |

## <u>ORDER & OPINION</u>

The matter is before the Court on a Motion to Dismiss the Second Amended Complaint, (Doc. 68), and a Motion to Strike or Deny Class Allegations, (Doc. 77), filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). For the reasons explained below, both motions are DENIED.

### LEGAL BACKDROP

Plaintiffs have filed several putative class actions around the country.[1] The actions arise under the Medicare Secondary Payer ("MSP") provisions of the Medicare

---

[1] *See, e.g.*, *MAO-MSO Recovery II, LLC et al. v. State Farm Mutual Automobile Ins. Co.*, No. 17-cv-1537 (C.D. Ill. Feb. 23. 2017); *MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co*., No. 17-CV-175-JDP, 2018 WL 835160, at *1 (W.D. Wis. Feb. 12, 2018); *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co*., No. PWG-17-711, 2018 WL 999920, at *7 (D. Md. Feb. 21, 2018); *MAO-MSO Recovery II, LLC v. USAA Cas. Insuranc Co*., No. 17-20946-CIV, 2018 WL 295527, at *1 (S.D. Fla. Jan. 3, 2018); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*, 281 F. Supp. 3d 1309 (S.D. Fla. 2017); *MAO-MSO Recovery II, LLC v. Mercury Gen*., No. CV 17-2557-AB (FFMX), 2017 WL 5086293, at *1 (C.D. Cal. Nov. 2, 2017); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch*., No. 217CV02522CASPLAX, 2017 WL 5634097, at *1 (C.D. Cal. Nov. 20, 2017); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250 (S.D. Fla. 2016), *appeal dismissed*, No. 17-11273-JJ, 2017 WL 4386453 (11th Cir. Sept. 19, 2017); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:16-CV-20459-KMM, 2016 WL 4157592, at *1 (S.D. Fla. Aug. 3, 2016), *reconsideration denied*, No. 1:16-CV-20459-KMM, 2017 WL 1289321 (S.D.

Act, 42 U.S.C. § 1395y *et seq.* "The MSP makes Medicare insurance secondary to any 'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (citing § 1395y(b)(2)(A)). Under the MSP provisions, Medicare is not supposed to pay medical expenses when payment has been made or can reasonably be expected to be made by a primary plan, such as a car insurance plan. § 1395y(b)(2)(A)(ii). However, if a primary plan "has not made or cannot reasonably be expected to make payment," the Secretary can make a conditional payment—but since Medicare remains the secondary payer, the primary plan must reimburse Medicare for the conditional payment. § 1395y(b)(2)(B)(i)-(ii).

Section 1395y(b)(3)(A) of the MSP provisions provides for a private cause of action against primary payers who do not reimburse secondary payers for conditional payments made to Medicare beneficiaries. Part C of the Medicare Act allows Medicare enrollees to obtain their Medicare benefits through private insurers, called Medicare Advantage Organizations ("MAOs"), instead of receiving direct benefits from the government. 42 U.S.C. § 1395w-21(a). An MAO may sue a primary plan under subsection (b)(3)(A) that fails to reimburse it for conditional payments made. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 355 (3d Cir. 2012).[2]

Fla. Mar. 31, 2017), *appeal dismissed* (Sept. 19, 2017); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 16-20271-CIV, 2016 WL 3751481, at *1 (S.D. Fla. July 14, 2016); *MSP Recovery, LLC v. Progressive Select Ins. Co.*, 96 F. Supp. 3d 1356 (S.D. Fla. 2015).

[2] Since the decisions by those circuits, district courts around the country have followed suit and held that MAOs may avail themselves of the private cause of action afforded in subsection (b)(3)(A). *See,*

Plaintiffs in this case are not MAOs. Rather, they allege they have been assigned rights of recovery under the MSP provisions by numerous MAOs, "first-tier entities," and "downstream entities." (Doc. 63 at 1). Plaintiffs allege that numerous Medicare beneficiaries were members of the assignor-MAOs, but were also insured under no-fault automobile insurance policies issued by State Farm. The Medicare beneficiaries were involved in car accidents that required medical services. Plaintiffs contend that State Farm, as the primary payer, failed to pay for the medical services, so the assignor-MAOs issued conditional payment. Plaintiffs aver that State Farm has failed to reimburse the assignor-MAOs for conditional payments made, giving rise to liability under § 1395y(b)(3)(A). Plaintiffs also bring one count for breach of contract under 42 C.F.R. § 411.24(e).

## BACKGROUND

Plaintiffs filed their original complaint on February 23, 2017, in the Southern District of Illinois. (Doc. 1). State Farm filed a Motion to Dismiss on April 26, 2017, (Doc. 26), prompting Plaintiffs to file their Amended Complaint on May 17, 2017. (Doc. 32). On May 31, 2017, State Farm filed a Motion to Dismiss the Amended Complaint for lack of standing. (Doc. 34). On January 9, 2018, after the case was transferred to this district, this Court granted State Farm's motion to dismiss for lack of standing. (Doc. 59). The Court held that Plaintiffs failed to sufficiently allege injury

*e.g.*, *Humana Ins. Co. v. Paris Blank LLP*, 187 F.Supp. 3d 676, 681 (E.D. Va. 2016); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F.Supp.3d 1285, 1290–91 (S.D. Fla. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, No. 14-476, 2015 WL 5449221, *5-*6 (E.D. Tenn. Sept. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F.Supp.3d 653, 664–65 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F.Supp.3d 983, 986 (W.D. Tex. 2014).

in fact by the proposed class representatives. *Id.* at 6. Plaintiffs were granted leave to amend, giving rise to their Second Amended Complaint, filed on January 30, 2018. (Doc. 63).

On March 6, 2018, State Farm filed a Motion to Dismiss the Second Amended Complaint. (Doc. 68). State Farm again argues that the matter should be dismissed for lack of standing, or in the alternative, that Plaintiffs have failed to state a claim upon which relief can be granted. On April 6, 2018, Plaintiffs filed a response. (Doc. 73). On April 24, 2018, State Farm also filed a Motion to Strike or Deny Class Allegations. (Doc. 77). On May 8, 2018, Plaintiffs filed a response to that motion. (Doc. 81). These matters are now ripe for decision.

DISCUSSION

## I. State Farm's Challenge to Subject Matter Jurisdiction Under 12(b)(1)

"Standing is an essential component of Article III's case-or-controversy requirement." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Id.* (citing *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)).

Standing consists of three elements. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (internal citation omitted). For an injury to be "concrete," it must be "real" and "not abstract." *Id.* The threshold requirements of standing apply to representative plaintiffs in class actions. *Pierre v. Midland Credit Mgmt., Inc.*, No. 16-2895, 2017 WL 1427070, *3 (N.D. Ill. Apr. 21, 2017).

In evaluating a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must first determine whether a factual or facial challenge has been raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge contends that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. *Apex Dig.*, 572 F.3d at 444. "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173. In contrast, a facial challenge argues that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." *Apex Dig*, 572 F.3d at 443. "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha*, 807 F.3d at 173. State Farm brings a factual challenge to standing, arguing that Plaintiffs do not in fact hold valid assignments from MAOs.

## A. Plaintiffs Have Sufficiently Shown They Hold a Valid Assignment

State Farm argues that Plaintiffs do not hold valid assignments to pursue rights of recovery under the MSP provisions. Plaintiffs contend that Florida Healthcare Plus ("FHP"), an HMO, assigned its right of reimbursement under the MSP to La Ley Recovery Systems, Inc. ("La Ley Recovery"), a Florida Corporation, and that La Ley Recovery then assigned its rights of recovery to Plaintiff MSPA Claims 1, LLC. Plaintiffs further contend that SummaCare, Inc. ("SummaCare") assigned its right of reimbursement to Plaintiff MSP Recovery, LLC. While the Court concludes that the SummaCare agreement cannot confer standing, the La Ley Recovery agreement is sufficient to confer standing.

Plaintiffs provided a document titled "Recovery Agreement" entered into between SummaCare and Plaintiff MSP Recovery, LLC. (Doc. 63-9). The Court need not consider whether the Recovery Agreement is a valid assignment because even if it is, it cannot confer Article-III standing in this case because the Recovery Agreement was entered into on May 12, 2017, *after* this lawsuit was filed. (Doc. 63-9). Constitutional standing must exist at the time the lawsuit is filed. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180 (2000); *Martin v. United States*, No. No. 13-03130, 2017 WL 59070, at *7 (C.D. Ill. Jan. 5, 2017); *Gaylor v. Mnuchin*, 278 F. Supp. 3d 1081, 1089 (W.D. Wis. 2017); *see also Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 824–25 (7th Cir. 2014) ("The Constitution does not allow federal courts to hear suits filed by plaintiffs who lack standing.").

Plaintiffs also provided a document titled "La Ley Recovery Systems Agreement" ("LLR Agreement") entered into between FHP and La Ley Recovery on April 15, 2014. State Farm argues that the LLR Agreement is not an assignment, but just a contingency-fee agreement.

The LLR Agreement does not have a governing law provision, and neither party raises the issue of conflicts of law. Generally, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 427 (7th Cir.1991). Illinois law provides that "a chose in action is assignable personal property." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 762 (7th Cir. 2008) (Ripple, J., dissenting). The legal landscape regarding what constitutes an assignment under Illinois law is fairly clear:

> An assignment occurs when "there is a transfer of some identifiable interest from the assignor to the assignee." *Klehm v. Grecian Chalet, Ltd.,* 164 Ill.App.3d 610, 616, 115 Ill.Dec. 662, 518 N.E.2d 187 (1987). "Generally, no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." *Stoller v. Exchange National Bank of Chicago,* 199 Ill.App.3d 674, 681, 145 Ill.Dec. 668, 557 N.E.2d 438 (1990). A valid assignment "needs only to assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification." *Klehm,* 164 Ill.App.3d at 616, 115 Ill.Dec. 662, 518 N.E.2d 187. The assignment transfers to the assignee all the "'right, title or interest of the assignor in the thing assigned.'" *Owens v. McDermott, Will & Emery,* 316 Ill.App.3d 340, 350, 249 Ill.Dec. 303, 736 N.E.2d 145 (2000), quoting *Litwin v. Timbercrest Estates, Inc.,* 37 Ill.App.3d 956, 958, 347 N.E.2d 378 (1976).

*Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 756 (Ill. App. Ct. 2008).

Florida law is similar, in that the intent of the parties controls. *See Citizens Prop. Ins.*

*Corp. v. Ifergane*, 114 So. 3d 190, 195 (Fla. Dist. Ct. App. 2012) ("In Florida, the intent of the parties determines the existence of an assignment."); *see Price v. RLI Ins. Co.,* 914 So. 2d 1010, 1013–14 (Fla. Dist. Ct. App. 2005) (an assignment is a transfer of all the interests and rights to the thing assigned).

The LLR Agreement provides that FHP retains "La Ley Recovery as an independent contractor to recover costs already paid for and/or generate revenue on a fee for services provided and/or shift current expenses incurred" for FHP's "insureds and/or members that have been involved in accidents and/or have Workers Compensation claims and/or any other incident/accident or for medical services of any kind whereby" FHP "may either bill for services or recovery for payment of medical services." (Doc. 63-3 at 1). Significantly, it states,

> It is the intent of the parties to assist each other in the implementation of a system whereby Client [FHP] and/or any entity it has contracted to recover, shift and/or bill on a fee for service for all medical services and/or medications, diagnostic test or any amount it is obligated to pay to/or on behalf of any member or other liability that can be legally collected directly through an assignment of any kind and/or through Medicare and/or Medicaid rights and/or by State and/or Federal statute of any kind and/or any other right of any nature whatsoever that exists now or in the future. **By way of this agreement, Client [FHA] appoints, directs and otherwise assigns all of Client's [FHA's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants. The parties agree that any rights conferred to Client [FHA] by Medicare Advantage plans either by statute, contract and/or any other reason whatsoever will be administered by La Ley Recovery** . . . .

*Id.* at 1-2 (emphasis added). The LLR Agreement also has a provision discussing litigation costs. It states, in pertinent part,

> Costs include, but are not limited to, filing fees, expert witness fees, deposition fees, witness fees, court reporter fees, long distance telephone charges, photocopy charges, etc. **La Ley Recovery ,** will pay these costs up front, however, once there is a settlement and/or judgment amount, then the **La Ley Recovery** , may retain and deduct its costs advanced herein provided . . . .

*Id.* at 2. These terms sufficiently demonstrate an intent by FHP to transfer claims under the MSP provisions to La Ley Recovery.[3]

On February 20, 2015, La Ley Recovery assigned its claims from FHP to Plaintiff MSPA Claims 1, LLC (the "MSPA Assignment"). (Doc. 63-4). The LLR Agreement required that any subsequent assignee must be approved by FHP. (Doc. 63-3 at 2) ("La Ley Recovery may assign the Agreement in whole or in part but the assignee must be approved by the Client."). Plaintiffs allege in their Second Amended Complaint that FHP "accepted, acknowledged, approved, and consented to any subsequent assignment from La Ley recovery to any then-existing or future MSP Company, which includes Plaintiff, MSPA." (Doc. 63 at 12, ¶ 52). They further allege that the MSPA Assignment was subsequently approved by FHP's receiver through a settlement agreement between FHP and some of the Plaintiffs. *Id.* ¶ 53.

State Farm contends that the allegations concerning approval are vague and insufficient to survive dismissal. The Court disagrees; allegations of approval are enough to plausibly infer that MSPA Claims 1, LLC, holds a valid assignment at this stage. *Compare MSPA Claims 1, LLC v. United Auto. Ins. Co.,* 204 F. Supp. 3d 1342,

---

[3] *Cf. McKee-Berger-Mansueto, Inc. v. Bd. of Educ. of City of Chicago*, 691 F.2d 828, 836 (7th Cir. 1982) (discussing how Illinois courts do not necessarily view contingency fee agreements and assignments as mutually exclusive).

1345 (S.D. Fla. 2016) (granting Defendant's facial challenge to the complaint because Plaintiffs failed to allege that FHP approved Plaintiff's Assignment).

However, State Farm also brings a factual challenge to the approval. State Farm argues that FHP went into receivership on or about December 10, 2014. Under the order appointing the receiver, prior contracts were cancelled unless specifically adopted by the receiver within 90 days. State Farm argues that the receiver rejected the LLR Agreement, thereby terminating it. Although, State Farm does not provide evidence that the receiver rejected the LLR Agreement. Rather, it cites to *MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342, 1345 (S.D. Fla. 2016), where the Court had evidence of multiple letters showing that FHP's receiver repudiated the LLR Agreement. Those letters are not before this Court.

Plaintiffs attached a document titled "Settlement Agreement" entered into on June 1, 2016, between La Ley Recovery and MSPA Claims 1, LLC (and two of the other Plaintiffs) on the one side and FHP's receiver on the other side. (Doc. 63-5). The Settlement Agreement refers to the LLR Agreement stating: "on April 15, 2014, La Ley entered into a Cost Recovery Agreement with" FHP under which FHP "assigned all rights, title and interest held by FHCP to certain recoveries related to accidents or incidents recoverable pursuant to the" MSP Provisions and other state/federal laws. *Id.* The Settlement Agreement refers to the LLR Agreement as the "Initial Agreement." It states:

> Receiver acknowledges and agrees that the terms and conditions of the Initial Agreement, to the extent such terms and conditions do not conflict with the terms and conditions of this Settlement Agreement, shall remain in full force and effect from April 15, 2014 until the

Effective Date of this Settlement Agreement. . . . Receiver . . . expressly acknowledges and agrees that as of the execution of the Initial Agreement, all rights, title, and interest held by FHCP [(FHP)] to recoveries, including any rights, title and interest assigned to FHCP [(FHP)] members, related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act . . . and all rights, title and interest to recover payments made by FHCP [(FHP)] on behalf of FHCP [(FHP)] members pursuant to various legal theories related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act . . . were and continue to be irrevocably assigned to La Ley.

*Id.* at 2.

The Settlement Agreement also appears to approve the subsequent MSPA Assignment: "the Assigned Claims may be assigned by and among any of the companies collectively referred herein as "La Ley," and the Receiver acknowledges that any assignment of the rights described hereunder by or among those companies collectively referred to as "La Ley" occurring prior to the execution of this Settlement Agreement shall be valid and enforceable." *Id.* at 9. "La Ley" as used throughout the Settlement Agreement referred to La Ley Recovery, MSPA Claims 1, LLC, MSP Recovery LLC, and MSP Recovery Services, LLC. *Id.* at 1. Thus, Plaintiffs have provided sufficient documentation at this juncture to show that MSPA Claims 1, LLC, holds a valid assignment.[4]

---

[4] The Court was perplexed by the idea that FHP could assign all of its rights in a cause of action, but still require approval of any subsequent assignee. This seems wholly inconsistent with an assignment, given an assignment transfers all rights to the thing assigned. Even had the subsequent assignment not been approved, the Court would not be inclined to invalidate it. In Illinois and Florida, a provision in an insurance policy which prohibits its assignment except with the consent of the insurer does not apply to prevent assignment of claim or interest in the insurance money due after the loss. *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.,* 165 So. 3d 749, 753 (Fla. Dist. Ct. App. 2015) ("Even when an insurance policy contains a provision barring assignment of the policy, an insured may assign a post-loss claim."); *Young v. Chicago Fed. Sav. & Loan Ass'n,* 535 N.E.2d 977, 980 (1989) (same). In other words, when interpreting anti-assignment provisions in insurance contracts, Illinois and Florida courts distinguish between an assignment before loss, which involves a transfer of a contractual relationship, and an assignment after loss, which is the transfer of a right to a money claim. Those courts do not allow anti-assignment provisions to prevent the assignment post-loss, *i.e.*, the assignment of a cause of action. *See id.* at 980-81 (assignment was valid even without insurance company's consent because "[a]n insurance policy that is assigned after a claim

### B. Plaintiffs Have Sufficiently Shown That MSPA Claims 1, LLC, Sustained an Injury Through Exemplar Beneficiary O.D.

State Farm argues that this Court lacks subject matter jurisdiction because, even if Plaintiffs have valid assignments, they have suffered no injury with regards to the exemplar beneficiaries. In order to show that Plaintiffs have suffered an injury, they alleged claims related to two exemplar beneficiaries: O.D. and C.S. The alleged injury related to the O.D. allegations arises out of the MSPA Assignment, whereas the injury related to the C.S. allegations arises out of the SummaCare Assignment. Because the SummaCare Assignment cannot support standing, the Court need not discuss the C.S. allegations.

Because the MSP provisions permit Plaintiffs only to recover up to the statutory policy limits for each enrollee's medical expenses, *see* Doc. 63 at 31, ¶ 127, State Farm attached two declarations to its Motion purporting to show that O.D.'s claim has already been paid. Therefore, according to State Farm, MSPA Claims 1, LLC, is not entitled to reimbursement for O.D. and has suffered no injury. Specifically, James Richardson, a Claim Team Manager for State Farm, declared, in pertinent part, that (1) on December 13, 2013, State Farm notified CMS that its insured, O.D., was involved in a car accident and sustained injury; and (2) State Farm paid a series of medical bills under O.D.'s car insurance policy and those payments exhausted the coverage limits under the insurance policy. (Doc. 68-1).

---

arises is an assignment of the policy proceeds; such a transaction results in an assignment of a chose in action which does not require the insurer's consent). While this case does not deal with insurance policies, it is clear that Illinois and Florida courts disfavor anti-assignment provisions which attempt to interfere with an assignment of a cause of action.

State Farm claims that "exhaustion" of O.D.'s claim calls into question subject matter jurisdiction, but fails to explain *how*. The ultimate question in this case is whether State Farm failed to reimburse Plaintiffs' assignors for conditional payments made. Plaintiffs allege that MSPA Claims 1, LLC's assignor paid for O.D.'s expenses as well, but was not reimbursed. (Doc. 63 at 4, ¶¶ 15-20). If that is true, MSPA Claims 1, LLC, is entitled to reimbursement, regardless of whether State Farm also paid. Indeed, 42 C.F.R. § 411.24(i) states that "the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." *See Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006) ("The MSP authorizes a private cause of action against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share.") (citing section 411.24(i)). The Richardson declaration does not create a factual dispute about jurisdiction warranting Plaintiffs to provide more evidence at this juncture.[5]

## II. State Farm's Challenge to Plaintiffs' Allegations Under Rule 12(b)(6)

State Farm argues that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted under Federal Rule of Procedure 12(b)(6). In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

---

[5] A court need only find that one plaintiff has standing to permit the case to go forward. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give defendant notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### A. Count I: Plaintiffs Have Sufficiently Alleged Claims Under § 1395y(b)(3)(A)

Although the Seventh Circuit has yet to define the elements of a claim pursuant to the MSP private cause of action, 42 U.S.C. § 1395y(b)(3)(A), the Eleventh Circuit has held that "a plaintiff is entitled to summary judgment on a § 1395y(b)(3)(A) claim when there is no genuine issue of material fact regarding (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." *Humana*, 832 F.3d at 1239; *see MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.,* No. 17-711, 2018 WL 999920, at *9 (D. Md. Feb. 21, 2018) ("[T]here are three elements of the MSP's private cause of action: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service.") (internal citation omitted). Following

those three elements, the representative claim regarding O.D. includes sufficient factual allegations to state claims for relief pursuant to § 1395y(b)(3)(A).

The Second Amended Complaint alleges that (1) State Farm is considered a primary payer, (Doc. 63 at 2, ¶ 3); and (2) MSPA Claims 1, LLC's assignor paid for O.D.'s medical expenses in amount of $11,060.58, but State Farm should have paid for these expenses or reimbursed the assignor for conditional payment and failed to do so, (Doc. 63 at 4, ¶¶ 14-19). These allegations satisfy Rule 8's liberal pleading requirements.

State Farm argues that the Second Amended Complaint must allege that State Farm was notified of its failure to pay, but does not cite to any persuasive authority for that proposition. In any event, the Second Amended Complaint does allege that "Plaintiffs have notified Defendant of instances wherein Defendant, as a primary payer, failed to reimburse the Assignors for payments made on behalf of Medicare beneficiaries for medical items and services." *Id.* at 2, ¶ 4. Furthermore, it bears noting that Richardson stated in his declaration that MSP Recovery sent a letter "directly to State Farm and demanded information regarding the OD claim" in order to avoid litigation. (Doc. 68-1 at 2). Richardson further declared that State Farm responded that O.D.'s benefits were exhausted. *Id.* Thus, it is questionable whether State Farm can claim a lack of notice. Other district courts have held that similar allegations to the ones here are sufficient to state a claim for relief. *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.,* No. 17-2522, 2018 WL 2106467, at *11 (C.D. Cal. May 7, 2018); *Gov't Employees Ins. Co.,* 2018 WL 999920, at *12. The level of

factual particularity demanded by State Farm at the pleading stage all but asks Plaintiffs to prove their case, rather than simply plead their claims.

## B. Count II: 42 C.F.R. § 411.24(e) Can Be Enforced

Count II of the Second Amended Complaint is a stand-alone breach of contract claim pursuant to 42 C.F.R. § 411.24(e). Plaintiffs allege that their assignors are subrogated the right to recover primary payment from State Farm for State Farm's breach of contract with their insured, pursuant to 42 C.F.R. § 411.26. (Doc. 63 at 30, ¶ 123). Plaintiffs allege that State Farm was "contractually obligated to pay for medical items and services arising out of an accident, and Defendant failed to meet that obligation." *Id.* "This obligation was, instead, fulfilled by Plaintiffs and the Class Members," and "[u]nder the MSP provisions, Plaintiffs are permitted to subrogate the enrollee/insured's right of action against Defendant." *Id.*

State Farm argues that Plaintiffs cannot sue under 42 C.F.R. § 411.24(e) because it merely implements regulations for the MSP Act. This argument is unpersuasive, for "[w]here a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way." *Weber v. Seterus, Inc.*, No. 16-6620, 2018 WL 1519163, at *7 (N.D. Ill. Mar. 28, 2018) (internal citation omitted) (finding a private cause of action under an implementing regulation of RESPA). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). It is undisputed that Congress, through express language in § 1395y(b)(3)(A), created a right of action for

CMS to sue primary payers for reimbursement or recovery of conditional payments. State Farm has presented no reasoning for why § 411.24(e), which states that "CMS has a direct right of action to recover from any primary payer," cannot also be enforced.

In *Sandoval*, a class of non-fluent English speakers sued the Alabama Department of Public Safety, alleging that its administration of an English-only driver's license test violated 28 C.F.R. § 42.104(b)(2), the disparate-impact regulations implementing § 601 of Title VI of the Civil Rights Act of 1964. 532 U.S. at 278-79, 286. Section 601 provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

The Court explained that "private rights of action to enforce federal law must be created by Congress ..., [and that] [t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286. The Court held that while § 601 was clearly enforceable through a private cause of action, that cause of action did not extend to all the regulations meant to implement it. *Id.* at 286. Because the plain language of § 601 only banned intentional discrimination, only those regulations effectuating that ban could be enforced through § 601's private cause of action. *Id.*

Here, there is no doubt that § 411.24, titled "Recovery of conditional payments," effectuates the private cause of action under the MSP. Subsections (a) and (b) explain that the filing of a Medicare claim constitutes an express authorization for any entity that possesses information pertinent to the claim to release that information to CMS and the time frame for recovering conditional payments. § 411.24(a)-(b). Subsection (c) explains the amount of recovery CMS is entitled to when legal action is and is not required in order to recover. § 411.24(c). Furthermore, subsection (f) delineates specific claim-filing requirements, and subsection (i) provides for "special rules" in cases dealing with insurance settlements and disputed claims under insurance plans. § 411.24(f), (i). Unlike in *Sandoval*, § 411.24(e) (at least under the facts of this case) does not purport to create a right of action that Congress did not create by statute.

The Seventh Circuit has explained that a cause of action does not exist where a statute's language merely prohibits certain activities and mandates others, without rights-creating language or a focus on an intended class of beneficiaries. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 858 (7th Cir. 2017). Not only does § 411.24(e) have rights-creating language, but the entire regulation focuses on a beneficiary, CMS, and how CMS can pursue a remedy. *Compare Haywood v. Chicago Hous. Auth.*, 212 F. Supp. 3d 735, 749 (N.D. Ill. 2016) (a HUD regulation was phrased as a directive to the agency charged with implementing the statute, not as a conferral of the right to sue upon the beneficiaries of the statute).

Additionally, some regulatory history of § 411.24 in the Federal Register demonstrates that CMS understands § 411.24(e) as providing a private cause of action, or at least that the MSP Act and its implementing regulations can be enforced together.[6] And the "Attorney Services" page on CMS's website states, "Pursuant to 42 U.S.C. 1395y(b)(2(B)(ii)/Section 1862(b)(2)(B)(ii) of the Act) **and** 42 C.F.R. 411.24(e) & (g), CMS may recover from a primary plan or any entity, including a beneficiary, provider, supplier, physician, attorney, state agency or private insurer that has received a primary payment."[7] (emphasis added).

State Farm argues that, even if Plaintiffs are entitled to enforce § 411.24, Plaintiffs' breach of contract claim fails because "it neither alleges that Plaintiffs nor the purported assignors were parties to or intended third-party beneficiaries of any insurance contract to which State Farm was a party." (Doc. 68-3 at 21). According to State Farm, Florida law and Ohio law govern the claims of O.D. and C.S.

The Court disagrees, at least for now, that state law would govern these claims. The MSP Act specifically provides that

> [T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer.

---

[6] Medicare Programs; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80, Fed. Reg. 10611, 10613 (2015).

[7] ATTORNEY SERVS., CTRS. FOR MEDICARE & MEDICAID SERVS., https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Attorney-Services/Attorney-Services html (last visited July 3, 2018).

42 C.F.R. § 422.108(f); *see also id.* § 422.402 ("The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations."). As such, state contract laws are likely preempted by the MSP Act to the extent they interfere with Plaintiffs' reimbursement rights. *See Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 196 (S.D.N.Y. 2012) (New York anti-subrogation statute was expressly preempted by Medicare Act as it applied to Medicare and MA organization reimbursement rights). As such, the Court declines to dismiss Count II of Plaintiffs' Second Amended Complaint.

## III.   Defendant's Motion to Strike Class Allegations is Premature

State Farm also moves to strike or deny Plaintiffs' class allegations. Plaintiffs have not yet filed a motion for class certification. However, a court may deny class certification at "an early practicable time," even before the plaintiff files a motion requesting certification. FED. R. CIV. P. 23(c)(1)(A); *Kasalo v. Harris & Harris,* 656 F.3d 557, 563 (7th Cir.2011). "Particularly when pleadings 'are facially defective and definitively establish that a class action cannot be maintained,' the court can properly grant  a motion to strike class allegations at  the  pleading  stage." *Wolfkiel  v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014) (quoting *Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 WL 4962838, at *1 (N.D.Ill.2010)).

Class actions are governed by Federal Rule of Civil Procedure 23. "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prod., Inc.*

*v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs purport to bring a class action under Rule 23(b)(3). *See* Doc. 63 at 26. Rule 23(a) states that one or more members of a class may sue on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). If Rule 23(a) is satisfied, Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

In their Second Amended Complaint, Plaintiffs define the putative class as,

All Medicare Advantage Organizations, First Tier Entities, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries that are also covered by an MA plan;

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations, First Tier Entities, or their assignees for the items and services that were provided for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

> This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

(Doc. 63 at 22-23).

State Farm argues that Plaintiffs have failed to identify common questions that would resolve an issue that is central to each class claim, but the Court is not convinced. A class could potentially consist of beneficiaries (1) who had the same or very similar automobile insurance policies with State Farm and, (2) who unquestionably had medical services paid for by Medicare, and where (3) State Farm has failed to reimburse Medicare for those services. Those are contentions that could potentially be answered "in one stroke," *i.e.*, yes or no. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.).

State Farm also argues that individualized issues would make class treatment impossible. Specifically, State Farm contends that individualized issues like (1) whether the medical services in a particular claim were causally linked to the covered auto accident; (2) whether a beneficiary was receiving treatment for physical ailments prior to the accident; and (3) whether a particular charge was reasonable and necessary are not amenable to class certification. But the Court is not convinced that the aforementioned issues matter in regards to the ultimate question of whether State Farm is liable for failure to reimburse Medicare. The implementing regulations

make clear that, even in the case of a disputed claim under no-fault insurance, the primary payer must reimburse Medicare **even though it has already reimbursed the beneficiary or other party**, and **even if a primary payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment**. § 411.24(i)(1)-(2) (emphasis added). In other words, State Farm must reimburse Medicare under most circumstances no matter what, and then battle it out with the beneficiary.

In any event, even if State Farm is ultimately correct that those issues *do matter*, the Court cannot make these factual determinations now. If the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014).

The Court is not suggesting that Plaintiffs' case can proceed as a class action, or that it is even likely to do so. State Farm need remember we are only at the pleading stage and that Plaintiffs have not yet filed a motion to certify a class. The Court cannot say that Plaintiffs' class allegations are so facially and inherently deficient, that dismissal is warranted. *See Buonomo*, 301 F.R.D. at 295 ("If the plaintiff's class allegations are facially and inherently deficient, for example, a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action.") (internal citation omitted); *see also Boatwright v. Walgreen Co.*, No. 10-3902, 2011 WL 843898, at *2 (N.D.Ill. Mar. 4,

2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, ... a decision denying class status by striking class allegations at the pleading stage is inappropriate."). State Farm's Motion to Strike or Deny Class Allegations is DENIED. *See MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.,* No. 17-2522, 2018 WL 2106467, at *11 (C.D. Cal. May 7, 2018) (denying Defendant's motion to strike as premature "given that discovery is in its early stages, no Rule 16 conference has occurred, and plaintiffs have not filed motions for class certification.").

CONCLUSION

State Farm's Motion to Dismiss (Doc. 68) is DENIED. State Farm's Motion to Strike or Deny Class Allegations (Doc. 77) is DENIED. State Farm's Motion for Leave to File a Reply (Doc. 83) is DENIED as MOOT.

Entered this 13th day of July, 2018.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge