# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

MAO-MSO RECOVERY II, LLC, MSP )
RECOVERY LLC, MSP RECOVERY )
CLAIMS, SERIES LLC, & MSPA )
CLAIMS 1, LLC, )
        )
        Plaintiffs, )
        )
        v. )
        )
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
        )
        Defendant. )

Case No.  1:17-cv-1537

## ORDER & OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 172) and Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 207). Both motions have been fully briefed (*see* Docs. 175, 206, 212, 213, 215) and the matter is ripe for review.[1] For the following reasons, Defendant's motion is GRANTED and Plaintiffs' motion is DENIED.

### BACKGROUND

#### I. Legal Background

Originally enacted in 1965, Medicare "is a federal health insurance program primarily benefitting those 65 years of age and older." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013). Added in 1980, the Medicare Secondary

---

[1] The parties are admonished for their failure to comply with Local Rule 5.8(A), which requires courtesy paper copies be provided to the Court when a document is longer than thirty pages.

Payer (MSP) provisions of the Medicare Act, 42 U.S.C. § 1395y *et seq.*, "make[ ] Medicare insurance secondary to any 'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *Id.* (citing § 1395y(b)(2)(A)). Medicare generally does not pay medical expenses when a primary plan will or can be reasonably expected to cover the costs. § 1395y(b)(2)(A). However, a payment "conditioned on reimbursement" may be made where "a primary plan . . . has not or cannot reasonably be expected to make payment with respect to [an] item or service promptly." § 1395y(b)(2)(B)(i). "[I]f it is demonstrated that [a] primary plan has or had a responsibility to make payment with respect to" an item or service, the primary plan is required to reimburse "any payment made by the Secretary under this subchapter." § 1395y(b)(2)(B)(ii).

Part C of the Medicare Act, added in 1997, allows Medicare enrollees to obtain Medicare benefits through private insurers, Medicare Advantage Organizations (MAOs), rather than the government. 42 U.S.C. § 1395w-21(a). Part C "authorizes, but does not compel, a MAO to charge a primary plan for medical expenses paid on behalf of a participant." *Parra*, 715 F.3d at 1152–53. As this Court explained earlier in the case "[a]n MAO may sue a primary plan . . . that fails to reimburse it for conditional payments made" under the private right of action provided in § 1395y(b)(3)(A). (Doc. 86 at 2).

## II.    Procedural Background

Plaintiffs are several corporations which have aggregated rights of recovery under the MSP provisions by obtaining assignments from numerous MAOs and other organizations holding or purporting to hold rights of recovery under those provisions.

Defendant is an automobile insurance company. In this action, Plaintiffs are seeking to recover under the MSP provisions. Their theory of the case is members of the assignor-MAOs who were also insured under no-fault automobile insurance policies issued by Defendant were involved in car accidents requiring medical services; Plaintiffs allege Defendant failed to pay for the medical services or reimburse the assignor-MAOs for conditional payments issued.

This case was filed in the Southern District of Illinois on February 23, 2017. (Doc. 1). The Southern District of Illinois transferred the matter to this District on November 28, 2017, pursuant to a motion by Defendant under 28 U.S.C. § 1404(a). (Doc. 57).

Defendant thrice moved to dismiss under Rule 12, on, *inter alia*, standing grounds. (Docs. 26, 34, 68). The first motion to dismiss was made moot by Plaintiffs' First Amended Complaint (Doc. 32), the second motion to dismiss was granted but with leave to amend (Doc. 59), and the third motion to dismiss—addressed to Plaintiffs' Second Amended Complaint (Doc. 63)—was denied (Doc. 86). The Second Amended Complaint, which is presently the operative complaint, provided detail on two "exemplar" beneficiaries identified by initial as O.D. and C.S. (Doc. 63 at 3–9). The Court held the O.D. allegations were sufficient to survive a motion under Rule 12(b)(1) to dismiss for lack of standing, but the C.S. allegations were not because the assignment of the claim related to C.S. to a Plaintiff occurred after the lawsuit was filed. (Doc. 86 at 6, 12–13).

Defendant requested a bifurcated discovery schedule between discovery relevant to class certification and discovery on the merits, a deadline for amendment of the pleadings, and a deadline for joinder of additional parties; Plaintiffs opposed all of these requests. (Doc. 90). Magistrate Judge Jonathan E. Hawley accepted Defendant's discovery plan. (Doc. 91). Plaintiffs did not file an objection to Judge Hawley's decision.

The undersigned referred the matter to Magistrate Judge Tom Schanzle-Haskins for a report and recommendation concerning class certification.[2] (Docket Entry dated 01/04/2019). Plaintiffs' filed their Motion for Class Certification (Doc. 134) on June 24, 2019, Defendant filed a Memorandum of Law in Opposition to that motion (Doc. 150) on July 24, 2019, and Plaintiffs filed a Reply Memorandum (Doc. 192) on August 22, 2019. The parties also filed numerous evidentiary motions attendant to the class certification dispute.

The instant Motion for Summary Judgment (Doc. 172) was filed on July 29, 2019. Plaintiffs moved under Rule 56(d)(1) to stay or deny Defendant's Motion for Summary Judgment (Doc. 184); the Court suspended the response and reply deadlines to the Motion for Summary Judgment pending resolution of the Rule 56(d)(1) Motion (Docket Entry dated 8/16/2019). When the Rule 56(d)(1) Motion became ripe, the Court reviewed it and denied it because the Court did not find the

---

[2] This matter was reassigned to Judge Schanzle-Haskins due to Judge Hawley's recusal under 28 U.S.C. § 455(a).

Rule 56(d)(1) Motion sufficiently indicated specific evidence "essential to justify its opposition," Fed. R. Civ. P. 56(d), that would be uncovered. (Doc. 204).

Plaintiffs thereafter timely responded to the Motion for Summary Judgment. (Doc. 206). Additionally, they submitted the Motion for Leave to File Third Amended Complaint (Doc. 207) currently at issue. The purpose of the proposed amendments is to include detail on three exemplars—M.M., M.P., and E.C.—collectively referred to by the parties as the "Florida Exemplars," because they were the exemplar beneficiaries in a near-identical action in the United States District Court for the Southern District of Florida.[3] By including these exemplars, Plaintiffs seek to show standing on a basis different from that in the Second Amended Complaint.

## III.    Factual Background

O.D. was, at the relevant times, a beneficiary of MAO Florida Healthcare Plan (FHP). (Doc. 206 at 11, 13). FHP assigned its right of reimbursement to La Ley Recovery Systems, Inc., which in turn assigned the claims from FHP to Plaintiff MSPA Claims 1, LLC, on February 20, 2015. (Docs. 86; 206 at 13–14); *MSPA Claims 1, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-23165, Order Granting Mot. to Dismiss, ECF No. 31 (S.D. Fla. Mar. 5, 2019). O.D. was also insured through Defendant; the policy limits for the Florida Personal Injury Protection (PIP) insurance under Defendant's policy were $10,000. (Doc. 206 at 11).

---

[3] The Florida case was dismissed without prejudice for lack of Article III standing because the assignment with regard to the Florida Exemplars was not made until after that case had been commenced. *MSPA Claims 1, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-23165, Order Granting Mot. to Dismiss, ECF No. 31 (S.D. Fla. Mar. 5, 2019).

Defendant was notified O.D. had been in an automobile accident on October 23, 2013. (Doc. 212 at 4). On or about November 4, 2013, Defendant determined O.D. was a Medicare beneficiary. (Doc. 212 at 5). O.D. received treatment at Central Broward County Therapy Center (CBTC) and Florida Medical Center (FMC) following the accident. (Doc. 206 at 14–15). Defendant made payments to CBTC totaling $5,371.54 and to FMC totaling $4,628.46. (Doc. 206 at 14–15). Prior to December 9, 2013, Defendant paid $2,813.13 to CBTC, with the remaining $2,558.41 paid to CBTC between December 9 and December 23. (Doc. 212 at 5, 9). The payment to FMC was made on December 21, 2013 (Doc. 212 at 9).

O.D. was also receiving treatment at Select Physical Therapy Holdings, Inc. (SPTH) in the relevant time period. (Doc. 212 at 5). Defendant argues the services provided by SPTH were not related to the accident (Doc. 212 at 5–8); a fuller look at the record and determination as to whether there is any genuine dispute as to that issue is present in the Discussion. FHP made a payment to SPTH on December 9, 2013, although the amount and nature of that payment are a matter of disagreement. (Doc. 212 at 5–9). It made a further payment to SPTH on December 23, 2013, for either $160.95 or $164.23. (Doc. 212 at 9). FHP also may have made a payment to the County of Broward Office of the Sheriff and a payment to FMC in January of 2014. (Doc. 212 at 10).

The Court does not address the specific factual backgrounds of the Florida Exemplars, because it finds it unnecessary to examine those facts to resolve the instant motions.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant bears the burden of demonstrating that such genuine issue of material fact exists." *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018).

All assertions that a fact is disputed or cannot genuinely be disputed must be supported by citations to evidence in the record. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The record is viewed and all reasonable inferences are drawn in the nonmovant's favor. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). However, inferences "supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody v. Bd. of Trs. of U. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018).

The parties disagree on the standard for leave to amend the complaint at this stage of the litigation. (*Compare* Doc. 207 at 7 *with* Doc. 213 at 9). The standard is therefore elucidated, and their arguments considered, in the Discussion section.

## DISCUSSION

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual

cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). The doctrine of standing arises from that limitation. *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Article III standing thus "serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A Plaintiff's burden of showing standing is not relieved by surviving a motion under Rule 12(b)(1): "Beyond the pleading stage, standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation.' " *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 642 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"To demonstrate standing, a plaintiff must identify an injury caused by the complained-of conduct and redressable by judicial decision." *Cornucopia Inst. v. United States Dep't of Agric.* 884 F.3d 795, 796 (7th Cir. 2018). The injury must be concrete and particularized as well as actual or imminent. *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010).

The central question in this matter is whether Plaintiffs have suffered an injury in fact. Although Plaintiffs have aggregated numerous claims, the allegations in their Second Amended Complaint supporting standing related to only one; the injury asserted was the failure of Defendant to reimburse an assignor-MAO for conditional payments, for which Defendant bore responsibility, related to O.D.'s automobile accident. Additionally, Plaintiffs now seek to amend their complaint yet

again to include similar allegations related to three other beneficiaries. The discussion begins with an examination of whether the O.D. exemplar beneficiary payments survive Defendant's Motion for Summary Judgment, then turns to Plaintiffs' request to amend.

## I.    Standing Based Upon the O.D. Exemplar

The record reflects Defendant never made any payments to SPTH, and the payments by FHP to SPTH occurred before the $10,000 limit in O.D.'s policy with Defendant was reached. Defendant undisputedly paid FMC, by contrast, but if FHP made duplicative payments—which is a matter of disagreement—they occurred well after the exhaustion of the $10,000 limit. Plaintiffs argue Defendant had a responsibility to reimburse FHP for payments made to SPTH and payments made to FMC for treatment sought by O.D. (Doc. 206 at 38–39). Defendant argues the SPTH payments were not related to the accident, the FMC payments were not valid conditional payments giving rise to liability, and the exhaustion of policy limits means FHP would have paid the same amount even if Defendant was responsible for a given payment. (Doc. 212 at 5–9, 33–36). Additionally, Defendant argues this Court would be unable to grant relief on the O.D. claim because no request for payment was timely made and pre-suit notification under state law was not timely given; the Court does not reach the additional arguments.

### A.    The SPTH Payments

There are two issues with regard to the SPTH payments. First, the parties disagree about whether the payments made were related to the automobile accident. Under the relevant policy, Defendant was only responsible for medical expenses

caused by a motor vehicle accident (Doc. 153-17 at 14); if the knee pain treated by SPTH was solely caused by a prior knee replacement surgery, and not the automobile accident, Defendant would not be responsible. Second, Defendant argues even if it had a responsibility to make the SPTH payments, it exhausted the policy limits and, as a practical matter, FHP would have paid the same amount for O.D.'s treatment as a consequence. (Doc. 212 at 36). The Court finds it unnecessary to reach the second issue because the first is dispositive.

The factual dispute about the SPTH payments is not genuine. O.D. had a knee replacement surgery prior to the automobile accident; she first sought treatment from SPTH prior to the accident in connection with that surgery. (Doc. 154-14 at 4–6). SPTH recommended O.D. attend twelve physical therapy sessions over the next four weeks. (Doc. 154-14 at 6). Before the accident, O.D. visited SPTH at least twice. (Doc. 154-14 at 4, 9). The day after the accident, O.D. had another appointment with SPTH; she told her physical therapist she had been involved in an accident but "L knee was unaffected by the incident . . . . Reports that L knee is feeling better today." (Doc. 154-14 at 11). Thereafter, the accident was not mentioned: O.D. attended at least two more appointments before declining further treatment. (Doc. 154-14 at 14, 17, 23, 24–25). On all of SPTH's records, prior- and post-accident, the "mechanism of injury" is reported as the knee replacement surgery, not the accident, and FHP is listed as the payer. (Doc. 154-14 at 4, 9, 11, 14, 17, 23, 24).

Plaintiffs' only proffered evidence that any treatment from SPTH was related to the accident comes from a declaration by a nurse practitioner employed by Plaintiff

MSP Recovery, LLC. The declaration states an ambulance record—which Plaintiffs have not adequately brought to the Court's attention[4]—shows O.D. complained of left knee pain following the accident, proffers an expert opinion that pain from a prior knee surgery would be exacerbated by an automobile accident, and presents two conclusions: (1) the accident either caused or exacerbated the knee pain and (2) therefore, the subsequent SPTH treatment was related to the accident. (Doc. 206-5 at 3).

"An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (quoted in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1159–60 (2019)). The expert here bases his opinion on his "knowledge, experience, and review of the medical records." (Doc. 206-5 at 3). But the expert's statement that "treatment for subjective complaints of left knee pain would be related to the accident" (Doc. 206-5 at 3) is utterly foundationless. While there may be some indication from the expert's declaration that treatment for exacerbated knee pain would have been *warranted* following the automobile accident, there is no basis for his conclusion that the treatment provided by SPTH following the accident was at all related to the accident. *Compare Cripe v. Henkel Corp.*, 858 F.3d 1110, 1113–13 (7th Cir. 2017) (affirming the

---

[4] The record in this case is voluminous; the Court will not attempt to track down a document for the parties without even a hint of where to look, assuming the document is in the record at all. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.").

grant of summary judgment where purported experts failed to sufficiently explain their conclusions or the relation to the alleged injuries, explaining "[y]ou can't beat something with nothing."). Plaintiffs have submitted only speculation, not substantial evidence, that the SPTH treatment was in any way medical treatment for a bodily injury caused by an automobile accident. *See McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) ("Naked opinions cannot stave off summary judgment.").

The Court finds there is no genuine dispute of material fact as to this issue, and the evidence before the Court demonstrates the post-accident appointments with (and payments to) SPTH were not related to the accident. As Defendant had no resulting responsibility to submit payments to SPTH for those appointments, FHP had no right to be reimbursed. There is no legally cognizable injury arising from the SPTH payments; they cannot provide the basis for standing.

B. *The FMC Payments*

As with the payments to SPTH, there are both factual and legal issues to adjudicate regarding the payments to FMC. Defendant maintains FHP did not, in fact, ever make a payment to FMC; if it did, there is no documentation supporting the claim that the payment was for the same items or services; and any proffered documentation is inadmissible (Doc. 212 at 11–14); Plaintiffs claim FHP did indeed pay FMC, and for the same items or services as Defendant. Defendant further argues any payment made to FMC was not a conditional payment for which FHP was entitled to reimbursement. The Court will assume, *arguendo*, the records submitted

by Plaintiffs are admissible and indicate payment for a service or item which Defendant had previously paid, because Defendant's legal argument is dispositive.

The Medicare Act has been called "among the most completely impenetrable texts within human experience." *Rehab. Ass'n of Va. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994).[5] As the Fourth Circuit noted, not only are the Medicare provisions "dense reading of the most tortuous kind," but in addition "Congress revisits the area frequently . . . making any solid grasp of the matters addressed merely a passing phase." *Id.*

Before dashing into the trees, a moment on the forest. The gravamen of Defendant's argument is that because it made payment to FMC well before FHP did so, any payments made by FHP were not conditional payments; consequently, Defendant reasons, it is not liable. (Doc. 212 at 33). Plaintiffs disagree, stating any payment actually made by an MAO for which Defendant was liable is secondary and subject to reimbursement. (Doc. 215 at 5). With these arguments in mind, the Court turns to the statute.

Pursuant to 42 U.S.C. § 1395y(b)(2)(A), payment

> under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that . . . payment has been made or can reasonably be expected to be made

---

[5] *Accord Cooper Univ. Hosp. v. Sebelius*, 636 F.3d 44, 45 (3d Cir. 2010); *Pers. Care Prods. v. Hawkins*, 635 F.3d 155, 159 n.18 (5th Cir. 2011); *Atrium Med. Ctr. v. United States Dep't of Health and Human Servs.*, 766 F.3d 560, 564 (6th Cir. 2014); *Abraham Lincoln Mem. Hosp. v. Sebelius*, 698 F.3d 536, 541 (7th Cir. 2012); *Alhambra Hosp. v. Thompson*, 259 F.3d 1071, 1076 (9th Cir. 2001); *Sunshine Haven Nursing Ops., LLC. v. United States Dep't of Health and Human Servs.*, 742 F.3d 1239, 1258 (10th Cir. 2014); *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 13 (D.C. Cir. 2011).

. . . under an automobile or liability insurance plan (including a self-insured plan) or under no fault insurance.

The aforementioned subparagraph (B) provides

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

42 U.S.C. § 1395y(b)(2)(B)(i).

The text is clear and repeated twice. Conditional payments may be made only where the primary plan "has not made or cannot reasonably be expected to make payment . . . promptly." 42 U.S.C. § 1395y(b)(2)(B)(i); *accord* § 1395y(b)(2)(A)(ii) (stating payment may not be made where "payment has been made" by a primary insurer). As Defendant notes, to prevent situations like the present one the implementing regulations require MAOs to identify and coordinate with primary insurers. 42 C.F.R. § 422.108.

Plaintiffs respond by arguing Defendant's position was "squarely dispelled" in *United States v. Baxter International, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). (Doc. 215 at 5). Plaintiffs' citation to *Baxter International* is unavailing, however, because they misunderstand the argument made by the defendants in that case. As the Eleventh Circuit explained it, the "[d]efendants argue[d] that Medicare is entitled to reimbursement *only* if Medicare pays after payment from a primary source either has been made or is expected promptly." *Baxter Int'l*, 345 F.3d at 885 (emphasis added). By contrast, Defendant is arguing MAOs are *not* entitled to reimbursement in

precisely that situation. (Doc. 212 at 33). This argument is supported, rather than refuted, by *Baxter International*: "[T]he only payments Defendants want to label as conditional are the very payments which § 1395y(b)(2)(A) provides Medicare should not make at all." *Baxter Int'l*, 35 F.3d at 888 n.15. In short, Plaintiffs have *Baxter International* completely reversed.

Closely following *Baxter International*, Congress provided some measure of clarity. When *Baxter International* was decided, the statute provided:

> Any payment under this subchapter with respect to any item or service to which subparagraph (A) applies shall be conditioned on reimbursement to the appropriate Trust Fund established by this subchapter when notice or other information is received that payment for such item or service has been or could be made under such paragraph.

*Baxter Int'l*, 345 F.3d at 885 (quoting 42 U.S.C. § 1395y(b)(2)(B)(i)). The confusion that lead to *Baxter International* was erased by Congress's 2003 amendments to the MSP provisions. *Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004). As relevant to this case, the amendments clarified in subparagraph (B)(i) that a conditional payment may only be made where the primary insurer has not made payment and cannot be expected to promptly do so. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, § 301, 117 Stat. 2066. Thus even if Plaintiffs were reading *Baxter International* correctly—which they are not—the 2003 amendments would nonetheless compel the same result.

Plaintiffs also cite to *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653 (E.D. La. 2014) for support. (Doc. 215 at 6 n. 5.). In that case, an MAO was unaware of the existence of a primary payer and therefore made a payment; the court

held because the MAO was unaware of a primary payer, it did not reasonably expect the primary payer to make a payment. *Id.* at 669. But nothing in Plaintiffs allegations or submitted facts suggests FHP was unaware of Defendant's policy with O.D., causing it to not believe a primary payer would pay. *Collins* is therefore inapposite.

The Court finds Plaintiff has not demonstrated from record evidence that any payment to FMC made by FHP was a "conditional payment" under the MSP. Rather, the record reflects any duplicative payment made by FHP occurred after Defendant's payments, and therefore cannot have been a conditional payment.[6] FHP, and by assignment, Plaintiffs, did not suffer an injury in fact giving rise to standing based upon the payments to FMC. Together with the ruling above, this means Plaintiffs have failed to establish standing based upon the O.D. claim.

## II.   The Motion to Amend

### A.   *Pleading Standards*

The Court must begin by refuting an essential misunderstanding of pleading standards articulated in Plaintiffs' Motion for Leave to File (Doc. 207) which may explain the difficulties Plaintiffs' have faced litigating this and related cases. Whether through ignorance or deliberate misleadingness, Plaintiffs recitation of pleading standards fails to reckon with, and at times is contrary to, leading Supreme Court cases regarding pleading standards. Plaintiffs state the standard as follows:

---

[6] Plaintiffs' argument in this case is the sweeping claim that any payment by Medicare or an MAO is a conditional payment, regardless of whether a primary payer made or could have been expected to make a payment. (*See* Doc. 215 at 6). In rejecting that argument, the Court does not foreclose the possibility that with some further showing, as in *Collins*, recovery might be possible even where a primary payer makes a payment prior to Medicare or an MAO making a payment.

> Under the notice pleading standard in federal court, a complaint need "contain only a statement calculated to give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Thus a plaintiff "is not required to plead either facts or legal theories." *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006).

(Doc. 207 at 3–4). This is completely untethered from the last decade of law.

Both *Baxter International* and *Hefferman* rely on *Conley v. Gibson*, 355 U.S. 41 (1957), in rendering the pleading standard under Federal Rule of Civil Procedure 8(a). *Baxter Int'l*, 345 F.3d at 881; *Hefferman*, 467 F.3d at 599. *Conley* was abrogated by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 560–63 (2007). Post-2007, at minimum, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "Plaintiffs do have to raise factual allegations in their complaints." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2019). And those factual allegations must be more than mere legal conclusions. *Iqbal*, 556 U.S. at 687.

The necessity of resorting to dicta to explain this is threefold. First, it is almost inconceivable that a decade after *Twombly* and *Iqbal* counseled parties would suggest they lack a responsibility to plead the requisite factual content to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. To the extent Plaintiffs have done so, the Court could not simply ignore it. Second, if Plaintiffs were, somehow, unaware of the proper standard, that would explain numerous issues in this and related litigation. Providing a detailed summary of the stand could ensure a smoother progression in any future litigation. Third, it explains

why a motion for leave to amend the complaint is relevant in a summary judgment dispute. As the Seventh Circuit has explained, "when a plaintiff does plead legal theories, it can later alter those theories" but "[a]n attempt to alter the factual basis of a claim at summary judgment may amount to an attempt to amend the complaint." *Chessie Logistics*, 867 F.3d at 859. Because the facts in the Second Amended Complaint demonstrating standing are under attack, Plaintiffs seek a different factual theory for standing than the one which was plausibly stated in the Second Amended Complaint (the O.D. allegations). In the Court's prior Opinion, it cautioned the Plaintiffs this was an effective attempt to amend the complaint (Doc. 204 at 8–9); Plaintiffs have chosen to formalize their request.

### B.   *Legal Standard*

Plaintiffs make their argument largely under Federal Rule of Civil Procedure 15. (Doc. 207 at 7). In relevant part, that Rule provides: "a party may amend its pleading . . . [with] the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant disagrees on the standard, arguing Rule 16(b)(4) applies. (Doc. 213 at 9). That Rule provides: "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiff appears to recognize the applicability of this rule (*see* Doc. 207 at 1, 6) and makes some argument related to it (Doc. 207 at 6) but does not mention it at all in the "Law and Argument" section (Doc. 207 at 7–13). However, as the Seventh Circuit has definitively held, a motion to amend filed after the deadline to amend is reviewed under "a two-step process" pursuant to which the Court applies "the heightened good-

cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2)" are met. *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

The scheduling plan set a deadline of October 12, 2018, for amendment of the pleadings. (Docs. 90 at 3, 91). Plaintiffs' request to amend was submitted almost a year beyond that deadline on October 2, 2019. (Doc. 207). The Seventh Circuit has upheld denials of motions for leave to amend under Rule 16(b)(4) filed four, six, and eight months after the respective deadlines where plaintiffs failed to demonstrate good cause. *Arrigo v. Link*, 836 F.3d 787, 797–98 (7th Cir. 2016). The good cause standard clearly applies in this instance.

### C.    Good Cause

Plaintiffs have not made a showing of good cause. "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720.

As an initial matter, Plaintiffs' argument on this point is severely underdeveloped. They quote a case stating good cause exists where "facts supporting the supplementation and amendment did not occur or were not made known to (the movant) [sic] until after the . . . deadline." (Doc. 207 at 6 (citation omitted)). Plaintiffs then assert they "could not be fully aware of potential defenses relating to the claims for C.S. and O.D.'s healthcare until the parties had conducted discovery." (Doc. 207 at 6). In their Response to Defendant's Motion for Summary Judgment, Plaintiffs

expand slightly upon this, stating Defendant did not produce the claim file relating to O.D. until January 2019. (Doc. 206 at 40–41).[7]

Plaintiffs' statement regarding "potential defenses" is deeply problematic. For one thing, the C.S. claim does not provide a basis for standing, as Plaintiffs knew before the deadline for amendment (Doc. 86 at 12), and is thus entirely irrelevant to whether they have good cause to amend. For another, Plaintiffs do not even attempt to support their assertion that there were facts related to O.D. which could not have been discovered prior to the deadline for amendment and which bore on the decisive question. The record here reflects since March 6, 2018, Plaintiffs have been on notice that O.D.'s policy limits were exhausted by December 13, 2013. (Doc. 68-1 at 1–2). Defendant maintains it informed Plaintiffs of this in May 2017. (Doc. 213 at 11). As the above analysis indicates, the timeline of payments is dispositive of the FMC payments. That timeline was established by the date of exhaustion and records belonging to FHP, which Plaintiffs had access to. There has never been any indication, aside from one created by a purported expert in Plaintiffs' employ, that the SPTH payments were related to the automobile accident. Therefore, any weakness in the O.D. exemplar claim could have been detected well before the deadline for amendment.

At any rate, the contention that Plaintiffs have been diligent is unavailing. Plaintiffs "were on notice from the outset that the issue of standing would be front

---

[7] The Court considers this argument, but it does not approve of Plaintiffs' decision to make this argument in the briefing of the Motion for Summary Judgment as opposed to the briefing for the Motion to Amend.

and center. If they were going to hang their hat on a single 'exemplar' after two unsuccessful attempts, it was important to get it right on the third try." *MAO-MSO I*, 935 F.3d at 582 (discussing an effectively identical case filed by the Plaintiffs against Defendant). Plaintiffs should have been careful in selecting O.D. and attempted to verify the claim related to her would provide standing. *See also* Fed. R. Civ. P. 11(b)(3) (requiring attorneys undertake a reasonable inquiry into allegations and certify factual contentions have evidentiary support, unless the attorney specifically identifies a factual contention that it believes will likely have evidentiary support following discovery).

Moreover, Plaintiffs have been well aware of the Florida Exemplars for years, as evidenced by the litigation history in Florida. The Florida Exemplars could have been added to any version of the complaint in this case by Plaintiffs.[8] But Plaintiffs chose not to include the Florida Exemplars in this case until the Florida case was

---

[8] Plaintiffs, incredibly, fault Defendant for the Florida Exemplars' case being in the Southern District of Florida. (Doc. 206 at 39–40). The record reflects the plaintiffs in that case, including Plaintiffs MSPA Claims 1, LLC and MSP Recovery Claims, Series LLC, moved to transfer jurisdiction to this Court on October 11, 2018—one day before the deadline to amend in this case. *MSPA Claims 1, LLC*, No. 18-cv-23165, Motion to Transfer Venue to the United States District Court for the Central District of Illinois, ECF No. 12 (S.D. Fla. Oct. 11, 2018). As Defendant noted, however, the plaintiffs could have simply dismissed the Florida case and added the exemplars to this action. *MSPA Claims 1, LLC*, No. 18-cv-23165, Defendant's Response to Plaintiffs' Motion to Transfer Venue, ECF No. 19 (S.D. Fla. Oct. 25, 2018). At any rate, the plaintiffs were the ones who chose to begin the litigation by filing in Florida state court, thus barring transfer until removal; they could have simply filed here at the beginning. Charitably, this was a litigation mistake which the plaintiffs are simply required to live with; uncharitably, the plaintiffs realized dismissal on standing grounds appeared possible in the Southern District of Florida and were attempting to game the system by transferring and consolidating with a case that had already passed the Rule 12(b)(1) hurdle.

dismissed and the future of this case appeared in peril, perhaps because such inclusion would have interfered with their apparent litigation strategy "to throw their allegations into as many federal courts as possible and see what sticks." *MSP Recovery Claims, Series LLC v. N.Y. Cent. Mut. Fire Ins. Co.*, No. 6:19-cv-211, 2019 WL 4222654, at *6 (N.D.N.Y. Sep. 5, 2019). The Court cannot accept Plaintiffs have acted diligently where they were on notice as to the issues with O.D. before the deadline for pleadings and the proposed added exemplars have been known to them for years.[9]

To the extent Plaintiffs believe they have exemplar claims which would demonstrate an injury in fact, they may file a new suit. *MAO-MSO I*, 935 F.3d at 582. But "enough is enough." *Id.* Federal court is not a sounding board for litigants to test various theories until they find one allowing the litigation to continue. Yet another opportunity to cure deficiencies in Plaintiffs' allegations is unwarranted.

## CONCLUSION

Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 207) is DENIED and Defendant's Motion for Summary Judgment (Doc. 172) is GRANTED. This matter is dismissed for want of jurisdiction. This matter is TERMINATED.

---

[9] The Court also notes Plaintiffs stated they would "soon be moving to incorporate" the Florida Exemplars into this case almost half a year before they moved to amend. (Doc. 126 at 3 n.1). While this particular lack of diligence did not cause them to miss the deadline for amendments—which had already passed when that statement was made—it makes their protestations of diligence even less credible.

SO ORDERED.

Entered this 25th day of November 2019.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
